IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TANYA M. TYO,                                             Case No.

    Plaintiff,

v.                                                                        JURY TRIAL DEMANDED

INTEGRITY FINANCIAL PARTNERS, INC.,

    Defendant.
_____/

COMPLAINT FOR DAMAGES WITH JURY TRIAL DEMAND

I.    INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq* (hereinafter "FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq* (hereinafter "FCCPA"); these laws prevent debt collectors and "persons" from, *inter alia*, engaging in abusive, deceptive, harassing, and unfair collection practices.

II.    JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337, 1367, and Fla. Stat. § 559.77(1).

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(d), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

III.    PARTIES

4. Plaintiff, TANYA M. TYO (hereinafter "Plaintiff"), is a natural person who is domiciled in the county of Hillsborough, state of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(2), and is also a person with

      standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act.

5. Defendant, INTEGRITY FINANCIAL PARTNERS, INC. (hereinafter "Defendant"), is a for-profit corporation, incorporated under the laws of the state of Kansas, with its principal place of business located at 4370 W. 109TH STREET, SUITE 100, OVERLAND PARK KS 66211, and is a "debt collector," as that term is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(6), as, in the regular course of its business, it collects or attempts to collect debts owed or due or asserted to be owed or due another, and is also an "out-of-state consumer debt collector," as that term is defined by Fla. Stat. § 559.55(8) as its business activities in this state involve collecting or attempting to collect consumer debt from debtors located in this state by means of interstate communication originating from outside this state.

### IV. FACTUAL ALLEGATIONS

-September 1st, 2011-

6. On or about September 1, 2011 Plaintiff received a call from a female representative of Defendant, Integrity Financial Partners, Inc., named Anisha Smith ("Smith").
7. It is alleged that during this call Smith had an overall tone of rudeness towards Plaintiff.
8. Smith explained why she was calling and made demand upon Plaintiff for full payment of the defaulted amount due, which was approximately $43,000.00.
9. Plaintiff explained to Smith that she could not afford to do that as she was not currently working.
10. Smith stated to the effect that Plaintiff "[had] to have some sort of income coming in."
11. Plaintiff explained that her husband's wages were the only household income.

12. At that time, Smith threatened Plaintiff that, if Plaintiff did not pay what Smith was asking her to pay, then Plaintiff's husband's wages could be garnished to go towards the debt.

13. It is alleged that Plaintiff's husband is not a co-debtor for this debt, and therefore, his wages, under no circumstances, could be garnished to satisfy Plaintiff's student loan debt.

14. Plaintiff was fearful of her husband's wages, which were her family's only source of income, being garnished for her debt, which was incurred before Plaintiff and her husband were married.

15. Plaintiff asked Smith if she could make a monthly payment toward the debt as that was all she could afford to do.

16. Smith advised Plaintiff that Sallie Mae does not allow Defendant to accept partial payments; she could only accept the full amount owing, and if Plaintiff did not pay this to Defendant, then Defendant would proceed with garnishing Plaintiff's husband's wages.

17. Due to Smith's rudeness during this call, Plaintiff ended the phone call.

18. After the first call was ended, Smith called Plaintiff's sister-in-law, who lives out of state, and inquired about Plaintiff's mother.

19. Smith asked the sister-in-law if Plaintiff's mother was employed, what type of income did she have, and did she have any assets like 401(k), etc.

20. Smith told Plaintiff's sister-in-law to keep it a secret as to what was being said during this call, and to not share this information with Plaintiff.

21. Shortly thereafter, Plaintiff called Defendant, and asked to speak with a supervisor.

22. Smith answered the phone back on the line but Plaintiff did not identify herself to Smith.

23. Smith asked Plaintiff, "Is this Beth?" to which Plaintiff replied that it was not.

24. Plaintiff continued with her requests to speak with a supervisor and Smith continued to refuse.

25. Eventually, Smith transferred Plaintiff to her supervisor.

26. Plaintiff inquired as to Smith's actions and statements and the supervisor looked back through the account notes to listen to the prior phone calls and see what had been happening.

27. The supervisor came back to explain to Plaintiff that Smith's actions were proper, though the supervisor stated that she could not listen to the first phone call initiated by Smith to Plaintiff, as there was no recording of that call; there was only a recording of Smith's conversation with Plaintiff's sister-in-law.

-September 2nd, 2011-

28. On or about September 2, 2011, after considering the threats that Smith made to her, Plaintiff called the original creditor/original servicer of the student loan, Sallie Mae, and spoke with a female representative.

29. Plaintiff was concerned that Defendant would garnish her husband's wages and that was her family's only source of income.

30. Plaintiff expressed her concern that Defendant would not accept a payment plan with Plaintiff and asked Sallie Mae's representative why she could not make payments.

31. Sallie Mae's representative responded that Plaintiff should be able to make payments and that Defendant should be accepting of a payment plan.

-Common Allegations-

32. Defendant's acts or omissions were attempts to collect a defaulted student loan debt originally owed to Sallie Mae, and which was incurred for Plaintiff's personal, family, or

household purposes, and is therefore a "debt" or "consumer debt," as those terms are defined by 15 U.S.C. § 1692a(5) and Fla. Stat. § 559.55(1).

33. All acts or omissions of the employees/agents of Defendant were performed within the scope of their respective employment/agency, thus subjecting Defendant to vicarious liability for these acts under the doctrine of *respondeat superior*.

34. Defendant's statements that Plaintiff could not enter into a payment plan, when indeed she could have, was violative of the FDCPA and FCCPA.

35. Defendant's threats to garnish the wages of Plaintiff's husband, when he was not actually liable for the money owed, were violative of the FDCPA and FCCPA.

36. As a result of Defendant's acts or omissions Plaintiff suffered from mental anguish in the forms of stress and fear over losing her family's only source of income.

V. CLAIMS FOR RELIEF

-Count I-
Violations of the Federal Fair Debt Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 36.

37. The foregoing acts and omissions of Defendant and its employees/agents constitute numerous and several violations of the FDCPA, including, but not limited to, 15 U.S.C. §§ 1692d generally, 1692e generally, 1692e(4), 1692e(5), 1692e(10), and 1692f generally.

38. As a result of the above violations of the FDCPA, Plaintiff is entitled to recovery for actual damages, statutory damages, and attorney's fees and costs.

-Count II-
Violations of the Florida Consumer Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 36.

39. The foregoing acts and omissions of Defendant and its employees/agents constitute violations of the FCCPA, including, but not limited to, Fla. Stat. §§ 559.72(7) and 559.72(9).

40. As a result of Defendant's violation of the FCCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FDCPA and FCCPA, and recovery for actual damages, statutory damages, punitive damages, and attorney's fees and costs.

### VI. RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment against Defendant for the following:

a. Equitable relief in the form of a Declaratory Judgment that Defendant's acts constituted violations of the FDCPA and FCCPA, pursuant to Fla. Stat. § 559.77(2);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1) and Fla. Stat. § 559.77(2);

c. Statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A) and Fla. Stat. § 559.77(2);

d. Punitive damages, pursuant to Fla. Stat. § 559.77(2);

e. Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and Fla. Stat. § 559.77(2); and

f. Such other and further relief that this Court may deem just and proper.

Respectfully submitted,

/s/ Joseph B. Battaglia
G. Donald Golden, Fla. Bar No.: 0137080
don@brandonlawyer.com
Joseph B. Battaglia, Fla. Bar No. 0058199
joe@brandonlawyer.com
THE GOLDEN LAW GROUP

        808 Oakfield Drive, Suite A
        Brandon, Florida 33511
        Telephone:  (813) 413-8700
        Facsimile:    (813) 413-8701
        Attorneys for Plaintiff

### DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.

        /s/ Joseph B. Battaglia
        Joseph B. Battaglia, Fla. Bar No. 0058199